```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


JAMES CLAYTON,                    )
                                  )
            Petitioner,           )
                                  )
      v.                          )        No. 4:09 CV 1487 DDN
                                  )
TROY STEELE,                      )
                                  )
            Respondent.           )
```

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner James Clayton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 20.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

On August 29, 2001, petitioner James Clayton pleaded guilty in the Circuit Court of the City of St. Louis on one count of first-degree assault and one count of armed criminal action. (Doc. 17, Ex. B at 14-27.) On October 19, 2001, the circuit court sentenced petitioner to twenty-five years on each count, with the sentences to run concurrently. (Id. at 33.)

On November 13, 2001, petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 24.035. (Id. at 53, 59-64.) On March 21, 2002, petitioner, with the benefit of counsel, filed an amended Rule 24.035 motion. (Id. at 69-102.) After conducting an evidentiary hearing, the circuit court denied petitioner's motion on June 7, 2004. (Id. at 105-111.) On February 10, 2005, the Missouri Court of Appeals reversed and remanded the matter because of missing transcripts from the post-conviction motion evidentiary hearing, and ordered a new evidentiary hearing. (Id. at 118.) After a new evidentiary hearing, the circuit court, on June 18, 2008, again denied the Rule 24.035 motion for post conviction relief. (Id. at 169-78.)

On July 3, 2009, the Missouri Court of Appeals affirmed the circuit court's denial of the motion. (Id., Ex. E at 1-5; Ex. F.) On September 19, 2009, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

## II. PETITIONER'S GROUNDS FOR HABEAS RELIEF

Petitioner Clayton alleges four grounds of constitutional violations for relief in this federal habeas action:

(1) Petitioner's trial counsel failed to advise him of the range of punishment for the crimes to which he pleaded guilty.

(2) Petitioner's trial counsel promised he would receive no more than ten years if he pleaded guilty.

(3) Trial counsel failed to advise him of and investigate an available legal defense of self-defense.

(4) The trial court failed to personally advise petitioner and assure itself that he understood the ranges of punishment.

(Doc. 1 at 5-10.)

Respondent argues that all of petitioner's grounds lack merit. Respondent does not dispute that petitioner exhausted his state court remedies as to Grounds 1 and 3, but argues that Grounds 2 and 4 are procedurally barred.

## III. Exhaustion and Procedural Bar

Congress requires that state prisoners exhaust their state law remedies for the claims they make in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods under Missouri law for asserting grounds for relief on direct appeal and in motions for post-conviction relief, because of the passage of time no proper procedure for litigating his federal habeas claims now remains available to petitioner. See Mo. S. Ct. R. 24.035(b)(post-conviction relief motion must be filed within 90 days after the mandate of the court of appeals affirming the judgment or

sentence is filed; 180 days from the date the person is delivered to the department of corrections); Mo. S. Ct. R. 81.04(a) (10 days to file a notice of appeal after circuit court judgment is final).

However, exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not satisfy the federal statutory requirement. Rather, petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).

Petitioner claims in his petition that he raised Grounds 2 and 4 when he appealed his denial of post-conviction relief to the Missouri Court of Appeals. (Doc. 1 at 7-8, 11-12.) However, a review of petitioner's 2009 post-conviction relief appeal shows that Grounds 2 and 4 were not raised on appeal, nor did the Missouri Court of Appeals consider them. (Doc. 17, Ex. C at 14-24; Ex. E at 1-5.) Therefore, because petitioner failed to raise Grounds 2 and 4 on appeal from the denial of his motion for post-conviction relief, Grounds 2 and 4 are procedurally barred from consideration by this court. Anderson, 459 U.S. at 6.

Nevertheless, petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Maples v. Thomas, 132 S. Ct. 912, 922 (2012); Coleman v. Thompson, 501 U.S. 722, 749-50 (1991).

To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense

impeded his efforts to comply with a state procedural requirement. Maples, 132 S. Ct. at 922; Coleman, 501 U.S. at 750-52.

To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. Schlup v. Delo, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a habeas court to reach the merits of a procedurally defaulted claim. Id. at 316.

Petitioner does not assert any legally sufficient cause that impeded his efforts to comply with state procedural requirements, nor does petitioner demonstrate any actual prejudice. Petitioner simply placed "N/A" in the areas of his petition asking him to explain why he did not raise those issues on appeal. (Doc. 1 at 7-8, 11-12.)

Further, petitioner has not proffered any new and reliable evidence indicating that he is innocent.

Thus, on Grounds 2 and 4 petitioner cannot surmount the procedural bar.

Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). As stated above, respondent asserts that none of petitioner's grounds have merit.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to clearly" established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or ... decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 130 S. Ct. 1171, 1174 (2010) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. (citation omitted).

In this case all of petitioner's federal habeas grounds were denied on their merits by the Missouri Circuit Court and Grounds 1 and 3 by the Missouri Court of Appeals.

### V. DISCUSSION

**Grounds 1 and 2**

In Ground 1, petitioner claims that his trial counsel failed to advise him of the range of punishment for the charges to which he pleaded guilty. In Ground 2, petitioner claims that his trial counsel promised that he would receive no more than ten years if he pleaded guilty.

State court findings of fact in a habeas corpus proceeding are entitled high deference, and federal courts cannot simply reject state court factual findings. Marshall v. Lonberger, 459 U.S. 422, 432 (1983); 28 U.S.C. § 2254(d)(2), (e)(1). The court can only review a state court's factual findings when clear and convincing evidence shows they are not supported by the record. Lomholt v. Iowa, 327 F.3d 748, 752 (8th

Cir. 2003). A credibility determination by a state court is afforded the same deference. Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008).

At his guilty plea hearing, petitioner testified under oath to several matters before the court accepted his plea. Petitioner affirmed that his counsel informed him of the possible range of punishment. (Doc. 17, Ex. B at 15-17, 19.)[1] Petitioner testified affirmatively he understood the possible sentence that he could receive, and also understood it was subject to Missouri's requirement that 85% of the sentence be served. (Id. at 19.) Petitioner also testified that he had received no promises in exchange of for plea of guilty, that he understood the state's recommendation of twenty-five years was non-binding, and that he understood that the court had not authorized anyone else to make a promise of a sentence in exchange for a plea of guilty. (Id. at 19-24.) The court also made it clear that petitioner could stop the questioning by the court and ask the court or his own counsel about any questions regarding his rights. (Id. at 21.)

At the end of the guilty plea proceedings, Mr. Eisenhauer informed the court that he had been in contact with petitioner for the past few months, reviewed all the evidence, had a variety of meetings, discussed possible defenses with petitioner, and that petitioner had determined that it was in his best interest to plead guilty. (Id. at 25-26.) Petitioner acknowledged these facts. (Id. at 26.)

At his sentencing hearing, on October 19, 2001, petitioner testified that before the guilty plea, in his conversations with defense counsel, defense counsel told him that he could receive a minimum sentence of ten years but that the state recommended 25 years. (Doc. 17, Ex. B at 38.)

At the evidentiary hearing, Mr. Eisenhauer testified that he had discussed these matters with petitioner at least twice. (Id., Ex. A at 64.) Included within those conversations was the range of punishment, being 10 years to 30 years or life with 85% being required to be served, and Mr. Eisenhauer testified that he remembered to do so because he had

---

[1] The plea transcript does not state the actual numerical range of years of potential imprisonment that petitioner faced. The only number stated was the 25 years in the state's recommendation and a conviction for first-degree assault requires service of 85% of the imposed term.

had a previous client who obtained post-conviction relief because he did not explain to the client the range of punishment. (Id. at 65-66.) Mr. Eisenhauer testified that he explained both the minimum and maximum sentences to petitioner, and that he also conveyed the state's offer of twenty-five years. (Id. at 66-68.)

Petitioner's other trial counsel, Mr. Sottile, testified that upon meeting with petitioner, he told petitioner that the range of sentencing was ten years minimum up to thirty years to life. (Id., Ex. B at 126.) Mr. Sottile testified that he had discussed the state's offer of twenty-five years. (Id. at 126, 128.) He also testified that he had never promised petitioner a ten year sentence or any specified sentence in exchange for a plea of guilty. Finally, Mr. Sottile testified that when petitioner initially contacted Eisenhauer and Sottile, his desire was to plead guilty and to attempt to receive the lowest possible sentence. (Id. at 128.)

In contrast to counsel's testimony at the post-conviction motion hearing and to petitioner's own testimony at his sentencing, petitioner testified at the evidentiary hearing that neither of his trial attorneys had ever told him the minimum or maximum sentences he could receive. (Id., Ex. A at 7-8.) Petitioner also stated the only time that Mr. Eisenhauer ever mentioned sentencing was after the guilty plea, when petitioner was told not to worry about the state's offer of twenty-five years because he could get petitioner seven years. (Id. at 10.) Petitioner testified that the first time he had ever heard the full range of sentencing was at the sentencing hearing. (Id. at 18.) Petitioner also testified that had he known the sentence could be more than ten years, he would have gone to trial instead of pleading guilty. (Id. at 11-12.)

The circuit court chose to credit petitioner's testimony at his guilty plea and his trial attorneys' testimony over petitioner's evidentiary hearing testimony. The court's factual finding, that petitioner was aware of the sentencing range for his charges and that petitioner was never promised any sentencing range, is supported by the record. Significantly, at the guilty plea hearing, petitioner stated that he understood the range of sentencing, and that he knew the state's

twenty-five year recommendation was not binding on the court. Petitioner also did not stop the proceedings to correct any misrepresentations by his attorneys. These assertions by petitioner during his guilty plea and his sworn statements at his sentencing are binding upon him. See United States v. Cruz, 643 F.3d 639, 642-43 (8th Cir. 2011) (holding testimony by defendant during his plea of guilty, that he understood the proceedings despite being on cold medicine and that he was not pressured by his attorneys to plea guilty, was binding later where defendant attempted to withdraw his plea, claiming the medicine incapacitated him and he was pressured by his attorneys to plead guilty).

Finally, petitioner has not provided clear and convicting evidence that the circuit court's factual findings are not supported by the record, and therefore those findings cannot be disturbed by this court. Lomholt, 327 F.3d at 752.

Therefore, Grounds 1 and 2 are without merit.

**GROUND 3**

In Ground 3, petitioner claims that his trial attorneys failed to advise him of, and investigate, an available self-defense claim, nor did his trial attorneys review witness depositions or interview potential witnesses.

The right to effective assistance of counsel arises from both the Sixth Amendment right to counsel and the Fourteenth Amendment guarantee of due process. Strickland v. Washington, 466 U.S. 668, 684-85 (1984). In the context of a guilty plea, a petitioner demonstrates ineffective assistance of counsel if, first, counsel's performance was deficient under the Strickland standard and, second, a "reasonable probability" exists that but for counsel's errors petitioner would not have pleaded guilty but would have gone to trial. Missouri v. Frye, 132 S. Ct. 1399, 1405-06 (2012) (discussing Hill v. Lockhart, 474 U.S. 52, 57-59 (1985)).

Strickland defines deficient performance as performance falling below an objective standard of reasonableness. Strickland, 466 U.S. at 688. This requires a showing that counsel committed errors so serious that the attorney was not functioning as "counsel" under the Sixth Amendment. Id. at 687-88. But even if counsel is deficient, a

petitioner must also show prejudice, and that but for counsel's errors he would not have pleaded guilty, but instead would have gone to trial. Hill, 474 U.S. at 59. When a petitioner claims ineffective assistance because counsel advised against an affirmative defense, the prejudice inquiry will depend on the likelihood the defense would have actually succeeded at trial. Id. When a petitioner claims ineffective assistance because counsel failed to investigate the case, prejudice will depend on whether the information would have caused counsel to change the recommendation for petitioner to plead guilty. Id.

Mr. Eisenhauer stated during the guilty plea hearing that as recently as the day before, he discussed potential defenses with petitioner. However, based on the evidence and the discussions with petitioner, petitioner felt it was in his best interests to plead guilty. Petitioner agreed with this statement. (Doc. 17, Ex. B at 26.) During the guilty plea hearing, the prosecution provided the following factual basis to which petitioner pleaded guilty:

> [STATE]: Your Honor, were the case to proceed to trial, the State would have proved beyond a reasonable doubt that on July 12th of the year 2000, in the alley behind 1133 Kentucky, in the City of Saint Louis, [petitioner], James Clayton, was arguing with his estranged wife, Jeanetta Perks. The argument began over custody of their children. That a struggle ensued.
>
> [Petitioner] called his sister, Mary Clayton, also known as Kathleen Clayton, outside. That at some point after Mary Clayton got outside, Mary saw that [petitioner] had pulled out a gun, stood in between [petitioner] and the victim, and pleaded with [petitioner] not to shoot Miss Perks. However, he reached around his sister and started shooting, continued to chase Jeanetta Perks down the alley and shot her five times. And as a result of those injuries she -- part of her leg was amputated.

(Id. at 23.)

At the sentencing hearing, however, petitioner claimed neither of his trial attorneys looked at the evidence of the case. (Id. at 28.) In response, Mr. Sottile admitted that although the depositions of witnesses to the incident were only made available after petitioner

pleaded guilty, reviewing them did not change his opinion that self-defense was not a viable tactic. (Id. at 28-29.)

Mr. Sottile testified at the post-conviction evidentiary hearing that when he spoke to petitioner, he believed self-defense was not a valid defense. He reasoned that, based on petitioner's statements and on the police report, petitioner had reached around his sister, had fired at an unarmed person, and had hit the victim in the back of her legs and/or back as she tried to flee, and therefore self-defense not likely to succeed. Mr. Sottile also testified that petitioner understood that the only two viable options were to proceed to trial or to conduct a blind guilty plea. (Id. at 127.) On cross examination, Mr. Sottile stated that neither he nor Mr. Eisenhauer conducted any depositions, met any witnesses or consulted with experts, and that the decision not to seek a self-defense claim was based only on the police report and petitioner's statements. (Id. at 128.)

At the evidentiary hearing, Mr. Eisenhauer testified that when petitioner would come to the law office to make payments, he would usually try and speak with petitioner and listen to what he had to say about the case. (Id., Ex. A at 64.) Mr. Eisenhauer testified that based on petitioner's own statements and the police report, he felt a self-defense claim would not succeed. Mr. Eisenhauer stated that petitioner was unhappy that self-defense was unavailable, but that petitioner ultimately made the decision to plead guilty. (Id. at 69.) Because of the strong evidence in the case against petitioner, Mr. Eisenhauer advised petitioner to participate in a blind plea, to be respectful to the pre-sentence investigator, and to express remorse for what he had done at the sentencing hearing. (Id. at 70-71.) On cross examination, Mr. Eisenhauer stated that there were some additional witnesses indicated by petitioner, but that neither of the trial attorneys nor their investigators had spoken to them, nor did he review their depositions with petitioner. (Id. at 79-81.)

At the evidentiary hearing, petitioner claimed that neither Mr. Eisenhauer nor Mr. Sottile discussed potential defenses with him, including self-defense. Petitioner claims that neither of his attorneys looked at any of the depositions or interviewed any witnesses, and had

he known that self-defense was a viable option he would not have pleaded guilty but would have proceeded to trial. (Id. at 14-16.)

Even if petitioner's counsel was deficient, there is no showing of prejudice. Strickland, 466 U.S. at 687. According to the Missouri Court of Appeals, defense counsel's advice that self-defense was not a viable defense "was sound trial strategy and an exercise of reasonable professional judgment." (Doc. 17, Ex. E at 5.) Nor does petitioner show how any of the investigation his trial attorneys failed to conduct would have changed his decision to plead guilty and instead go to trial. Hill, 474 U.S. at 59.

In Missouri, the use of deadly force is only authorized when a defendant "reasonably believes that such deadly force is necessary to protect himself." Mo. Rev. Stat. § 563.031.2(1). Flourishing a weapon constitutes the use of deadly force. State v. Parkhurst, 845 S.W.2d 31, 36 (Mo. 1992) (en banc). A federal court must defer to a state court's construction of state statutes. Missouri v. Hunter, 459 U.S. 359, 368 (1974).

Nothing suggests that petitioner's self-defense claim would have succeeded, or would have even been supported by substantial evidence, had he insisted on going to trial. Hill, 474 U.S. at 59. The Missouri Court of Appeals, when evaluating petitioner's claim of post conviction relief, stated that based on the facts of the case and Missouri law, petitioner's attorneys "acted reasonably in advising [petitioner] not to pursue that avenue," and therefore concluded he was not prejudiced by not pursuing the self-defense claim. (Doc. 17, Ex. E at 4-5.) When considering petitioner's claim, the Missouri Court of Appeals observed that even if petitioner's ex-wife started the altercation, they were separated by petitioner's sister and that petitioner reached around his sister to shoot at his ex-wife after the attack stopped. (Id. at 5.) Thus, as the Missouri Court of Appeals concluded, petitioner was not prejudiced by his trial attorneys not pursuing a self-defense claim. Hill, 474 U.S. at 59; Hunter, 549 U.S. at 368.

Further, even if petitioner's trial attorneys had conducted interviews of the other witnesses and had read their depositions before encouraging petitioner to plea guilty, there is nothing to indicate the

investigation would have changed counsel's recommendation to plead guilty and instead go to trial. Hill, 474 U.S. at 59. At petitioner's sentencing hearing, Mr. Sottile stated that although he had only read the depositions of other witnesses after the guilty plea, those did not change his opinion that the best course of action for petitioner was to plead guilty. (Doc. 17, Ex. B. at 29.) Further, even if petitioner's trial counsel had read the depositions or interviewed the additional witnesses, petitioner does not point to what information contained within those witness depositions or witness statements would have been useful or helpful to him had counsel properly investigated his case. A petitioner cannot merely show a failure to investigate, but must also show how the missing information would have been used at trial. Witherspoon v. Purkett, 210 F.3d 901, 903-04 (8th Cir. 2000).

Therefore, because there was no prejudice was by trial counsel's failure to further investigate the depositions or witnesses in the case, Ground 3 is without merit.

**GROUND 4**

Finally, in Ground 4 petitioner claims that the trial court failed to personally advise him and assure itself that he understood the ranges of punishment as required by Missouri Rule 24.02.

A court can only accept a plea of guilty if the defendant's guilty plea if knowing, intelligent, and voluntary. Brady v. United States, 397 U.S. 742, 748. A guilty plea is not knowing and intelligent if the court fails to inform the defendant of the consequences of his plea. Id. However, even if the court commits error and fails to inform the defendant of the sentencing range, this error is harmless if the defendant learned of it from counsel or another source. Clemons v. Armontrout, 921 F.2d 187, 190 (8th Cir. 1990); Rouse v. Foster, 672 F.2d 649, 651 (8th Cir. 1982).

Here, although the circuit court at the guilty plea hearing failed to explicitly inform petitioner of the specific years in the range of sentencing he faced, this error was harmless because, as the circuit court found, petitioner's trial counsel had informed him of the sentencing range. (Doc. 17, Ex. B at 177.) Petitioner had also stated

at his guilty plea hearing that his trial attorneys spoke to him about the sentencing range, and that he knew the possible range of sentencing that he faced. (Id. at 19.) As stated above, at his sentencing hearing petitioner testified that before he pleaded guilty his counsel told him of the ten year minimum and of the state's 25-year recommendation.

Therefore, Ground 4 is without merit.

## VI.  CONCLUSION

For the reasons stated above, the petition of James Clayton for a writ of habeas corpus is denied. An appropriate Judgment Order is issued herewith.

        /S/   David D. Noce
    **UNITED STATES MAGISTRATE JUDGE**

Signed on April 20, 2012.